Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, #140
Scottsdale, AZ 85260

Telephone:  (602) 482-4300
Facsimile:  (602) 569-9720
email: davis@scottdavispc.com

Scott M. Harris
State Bar No. 011524
Scott M. Harris, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone:    (602) 252-7400
Facsimile:    (602) 795-5610
email: harris@smharrislaw.com

*Attorneys for Plaintiff Kimberly Priestley*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Kimberly Priestley,<br><br>        Plaintiff,<br><br>    v.<br><br>Federal Express Corporation Short Term Disability Plan; Federal Express Corporation; Aetna Life Insurance Company,<br><br>        Defendants. | Case No.<br><br>**COMPLAINT** |

      Now comes the Plaintiff Kimberly Priestley (hereinafter referred to as "Plaintiff"), by and through her attorneys, Scott E. Davis and Scott M. Harris, and complaining against the Defendants, she states:

1

*Jurisdiction*

1.     Jurisdiction of the Court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2.     Plaintiff is a resident of Maricopa County, Arizona.

3.     Upon information and belief, Defendant Federal Express Corporation (hereinafter referred to as the "Company") sponsored, subscribed to and administered an Employee Welfare Benefit Plan within the meaning of 29 U.S.C. §1002(1) which was self-funded and the short term disability ("STD") benefits are issued through the general, unsegregated assets of the Company payable at 70% of such Employee's Covered Compensation. Upon information and belief, the name of the entity is the Federal Express Corporation Short Term Disability Plan (hereinafter referred to as the "Plan") which was created to provide the Company's employees with welfare benefits.

Upon information and belief, the Company and/or Plan may have delegated responsibility for the Plan's claim administration to Aetna Life Insurance Company (hereinafter referred to as "Aetna").  Plaintiff believes that as it relates to her claim, Aetna functioned as the Claim Administrator; however, pursuant to the relevant ERISA regulation, the Company and/or Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Aetna.

4.      Upon information and belief, the Company and/or Plan may have also operated under a structural conflict of interest in that they may have assumed dual roles as the claims administrator and payor of benefits; *to wit*, if one of the aforementioned entities reviewed and approved Plaintiff's claim it would then also be liable for payment of benefits.[1]

The Company and/or Plan's conflict of interest may have also led them to retain a company such as Aetna to be the claims administrator in that the Company or Plan funded the benefits and would directly benefit financially if Aetna administered the Plan's claims in a parsimonious manner.  Aetna's conflict of interest manifested in that if it maintained a parsimonious approach to managing the Plan's claims, it would benefit by being viewed favorably by the Company and/or the Plan, who would save money by minimizing the claims approval rate; therefore, leading to fewer monetary contributions to pay the Plan's benefits.

5.      The Company, Aetna, the Plan and Plan Administrator conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

### *Venue*

6.      Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

---

[1] In *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 868 (9th Cir. 2008) the court held, "In Bruch, the Supreme Court instructed us to "weigh[ ]" a fiduciary's "conflict of interest" as "a 'facto[r] in determining whether there is an abuse of discretion.' " 489 U.S. at 115 (quoting Restatement (Second) of Trusts § 187 cmt. d (1959)). *MetLife labors under such a conflict of interest: It both decides who gets benefits and pays for them, so it has a direct financial incentive to deny claims.* See Langbein, supra, at 1321 ("The danger pervades the ERISA-plan world that a self-interested plan decision maker will take advantage of its license under Bruch to line its own pockets by denying meritorious claims.")(emphasis added).

3

*Nature of the Complaint*

7.     Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and a "participant" as defined by 29 U.S.C. §1002(7).  Plaintiff seeks STD and long term disability (LTD) benefits from the appropriate Plan pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits she may be entitled to from the Plan and any other Company Plan as a result of being found disabled.

8.     After working for the Company as a loyal employee, Plaintiff became disabled on or about October 8, 2013, due to serious medical conditions and was unable to work in her designated occupation as a Sales Executive Inside Sales.  Plaintiff has remained disabled as that term is defined in the relevant Plan continuously since that date and has not been able to return to any occupation as a result of her serious medical conditions.

9.     Following her disability, Plaintiff applied for STD benefits under the relevant Plan which provides the following definition of disability:

> "Disability or Disabled shall mean Occupational Disability; provided, however, a Covered Employee shall not be deemed to be Disabled or under a Disability unless he is, during the entire period of Disability, under the direct care and treatment of a Practitioner and such Disability is substantiated by significant objective findings which are defined as signs which are noted on a test or medical exam and which are considered significant anatomical, physiological or psychological abnormalities which can be observed apart from the individual's symptoms.  In the absence of significant objective findings, conflicts with managers, shifts and/or work place setting will not be factors supporting disability under the Plan."

10.     In support of her claim for STD benefits, Plaintiff submitted medical records to Aetna from her treating physicians which supported her allegation that she met the Plan's relevant definition of disability.

11.     Aetna approved Plaintiff's STD claim and she received STD benefits through April 7, 2014, at which time Aetna determined Plaintiff was capable of returning to her prior occupation.

12.     In a letter dated April 22, 2014, Aetna informed Plaintiff it was terminating her STD benefits effective April 7, 2014.  In spite of Aetna's termination of her benefits, Plaintiff's medical condition(s) had not changed or improved in any meaningful way that would have allowed her to return to her prior work at the Company or any work for that matter.

13.     As part of its review of Plaintiff's claim for STD benefits, Aetna obtained medical records only "paper reviews" from two of its own employees, Tamara Bowman, M.D. and Edward Klotz, M.D.   Upon information and belief, Plaintiff believes Drs. Bowman and Klotz may be biased due to the fact that they may also be Aetna employees and may have incentives to protect their employment by providing paper reviews which selectively review or ignore evidence, as Plaintiff believes occurred in her claim, in order to provide opinions and report(s) favorable to Aetna and which supported the denial of Plaintiff's claim.

14.     Plaintiff alleges a lack of independence and impartiality on the part of Aetna's own employees, Drs. Bowman and Klotz, to fairly evaluate Plaintiff's disability claim as a result of their conflict of interest as Aetna employees.  Plaintiff alleges Aetna's conflicts of interest are a motivating factor in why it referred her claim to its own employees for review. If Drs. Bowman and/or Klotz are not Aetna employees, Plaintiff alleges that they may still lack independence and impartiality since they may be repeatedly retained by Aetna and/or the disability insurance industry in general, and may therefore have an incentive to protect their consulting relationships by providing medical record review reports which favor the entity who retained them and which support the denial of the claim, as occurred in Plaintiff's claim.

15.     Plaintiff timely appealed Aetna's April 22, 2014, termination of her short term disability benefits and in support of her claim, Plaintiff submitted to Aetna additional medical, vocational and lay witness evidence demonstrating she met the definition of disability set forth in the Plan.

16.     Plaintiff submitted to Aetna a narrative letter dated July 16, 2014 from her current treating board certified otolaryngologist, who after reviewing the Plan's definitions of "Significant Objective Findings" and "Disability," opined, "I believe that this motivated lady has a significant medical condition precluding her from obtaining gainful employment indefinitely."  In support of his medical opinions, the treating specialist set forth multiple significant objective medical findings which documented Plaintiff's disabling medical condition and the fact that she met the definition of disability in the Plan.

17.     Further supporting her claim, Plaintiff submitted an August 5, 2014 checklist letter completed by another board certified physician, who confirmed that he agreed with Plaintiff's otolaryngologist's opinion that she is unable to work in any occupation.

18.     Further supporting her claim, Plaintiff submitted to Aetna a vocational report from a certified vocational expert dated August 26, 2014, who after reviewing Plaintiff's medical evidence and the definition of disability and interviewing Plaintiff concluded, "Thus, it is my professional opinion, to a reasonable degree of vocational probability, that [Plaintiff] meets [the] definition of disability in the Aetna [Plan] and she is entitled to disability benefits on that [plan]."

19.     In addition to the medical opinions, records and vocational report submitted to Aetna, Plaintiff submitted two sworn affidavits from her husband and son, who both confirm Plaintiff is unable to work in any occupation and that her medical condition has not improved in any way since her date of disability.

20.     Upon information and belief, as part of its review of Plaintiff's claim for STD benefits, Aetna obtained two medical records only "paper reviews" of Plaintiff's claim from Steven Swersie, M.D. and Andrew Schubkegel, M.D.  In his report, Dr. Schubkegal opined that Plaintiff's claim was not documented with significant objective clinical findings which would cause a functional impairment and that she was able to return to her prior occupation.

21.     Upon information and belief, Plaintiff believes Dr. Schubkegel may be a long time medical consultant for the disability insurance industry and/or Aetna.  As a result, Plaintiff believes Dr. Schubkegel may have an incentive to protect his consulting relationships with the disability insurance industry and/or Aetna by providing medical records only paper reviews, which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and/or Aetna and which supported the denial of Plaintiff's claim.

22.     In contrast to Dr. Schubkegel's opinion, in his October 15, 2014 medical records review which was objective and unbiased, Dr. Swersie opined, "…I must conclude that there appears to be sufficient objective clinical documentation to support presence of a functional impairment for the claimant that would preclude her from performing the essential requirements of her sedentary position from 4/8/14 to the current date."

23.     Without explanation, Aetna disregarded Dr. Swersie's opinion that Plaintiff's claim was documented with "Significant Objective Findings" and that she met the definition of "Disability" in the Plan, when it rendered the final denial in her claim.

24.     In a letter dated October 1, 2014, in order to engage Aetna in a dialogue so she could perfect any alleged deficiencies in her claim, Plaintiff requested a complete copy of any and all medical records only "paper reviews" from Aetna and the opportunity for her and her treating physicians to respond prior to Aetna rendering a determination in her claim.

25.     Prior to its final denial, Aetna never shared with Plaintiff the reports authored by the reviewing physicians and never engaged Plaintiff or her treating medical providers in a dialogue so she could either respond to the reports and/or perfect her claim.  Aetna's failure to provide Plaintiff with the opportunity to respond to Drs. Swersie and Schubkegel's reports precluded a full and fair review pursuant to ERISA and is a violation of Ninth Circuit case law.

26.     Aetna informed Plaintiff in a letter dated November 5, 2014, it made a final decision to deny her claim for STD benefits and that she had exhausted her administrative remedies pursuant to ERISA.  Aetna provided copies of Drs. Swersie and Schubkegel's reports as attachments to its November 5, 2014 final denial, but did not disclose the reports before that date in order to preclude Plaintiff from responding.

27.     Aetna informed Plaintiff in its November 5, 2014 final denial that it was upholding its denial of her STD claim due to a lack of "significant objective findings" and as a result, she had failed to substantiate her eligibility for disability benefits.  However, Plaintiff's board certified otolaryngologist provided "significant objective findings" to substantiate her disability claim and her medical condition in his July 16, 2014 narrative letter, which was clearly disregarded by Aetna.

28.     Pursuant to ERISA and Ninth Circuit case law, Plaintiff should have been provided the opportunity during Aetna's review of her claim to respond to Drs. Swersie and Schubkegel's reports.  Following the final administrative denial of her claim by Aetna, in letters dated November 26, 2014 and March 4, 2015, in order to engage Aetna in a dialogue and to cure the deficiencies it alleged existed in her case, Plaintiff submitted additional medical evidence, including a response from her treating board certified otolaryngologist to

Dr. Shubkegel's report, and requested for Aetna to reopen her claim and consider this additional evidence.

29.     The additional evidence from Plaintiff's treating physician is highly relevant. Plaintiff's board certified otolaryngologist disagreed with and provided a specific response to Dr. Schubkegel's report and his opinions which were the basis of Aetna's final denial.  In his response, notwithstanding Dr. Schubkegel's report and opinions, Plaintiff's board certified otolaryngologist again opined that she was disabled and unable to work in any occupation due to her serious medical conditions.

30.     In response letters dated December 17, 2014 and March 6, 2015, Aetna informed Plaintiff it was denying each and every request to reopen her claim and that it would not consider any additional medical documentation, including her treating physician's response, as her claim was closed.

31.     Plaintiff alleges her November 26, 2014 and March 4, 2015 letters, along with the medical documentation submitted as an attachment to her March 4, 2015 letter should be part of the administrative record and/or admitted as extrinsic evidence by this Court due to Aetna's ERISA procedural error of not engaging her in a dialogue and allowing her to perfect/cure the record.  If Aetna had not committed an ERISA procedural violation and instead provided Plaintiff with a full and fair review as required by ERISA, in addition to following Ninth Circuit case law, she would have been afforded the opportunity to provide this evidence during the administrative review of her claim.

32.     In evaluating Plaintiff's claim on appeal and in determining whether it would review her treating physician's response to Dr. Schubkegel's report, Aetna had a fiduciary duty pursuant to ERISA to administer Plaintiff's claim, "solely in her best interests and

other participants" which it failed to do. [2]

33.    Upon information and belief, Aetna's November 5, 2014 denial letter confirms it failed to provide a full and fair review, and in the process committed several procedural violations pursuant to ERISA due to among other reasons, completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all of Plaintiff's reliable evidence.

34.    From the time Aetna originally evaluated Plaintiff's claim for STD benefits through the present, Plaintiff's disabling medical condition(s) have been documented with "significant objective findings" and she has remained unable to engage in any occupation due to her medical conditions and resulting limitations.

35.    Plaintiff alleges Aetna provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by failing to credit Plaintiff's reliable evidence; failing to adequately investigate her claim; failing to provide any weight and consideration without explanation, to the opinion of its own medical consultant (Dr. Swersie) who opined Plaintiff was unable to work; providing one sided reviews of Plaintiff's claim that failed to consider all evidence submitted by her and/or de-emphasized medical evidence which supported Plaintiff's claim; disregarding Plaintiff's self-reported symptoms; failing to consider all the diagnoses and/or limitations set forth in her medical evidence as well as the impact the combination of those diagnoses and

_____

[2] [ERISA] sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

impairments would have on her ability to work; failing to engage Plaintiff in a dialogue so she could submit the necessary evidence to perfect her claim and failing to consider the impact the side effects from Plaintiff's medications would have on her ability to engage in any occupation.

36.    Aetna failed to adequately investigate Plaintiff's claim and failed to engage Plaintiff in a dialogue during the appeal of her claim with regard to what evidence was necessary so Plaintiff could perfect her appeal and claim.  Aetna's failure to investigate the claim and to engage in this dialogue or to obtain the evidence it believed was important to perfect Plaintiff's claims is a violation of ERISA, Ninth Circuit case law and is a reason she did not receive a full and fair review.

37.    Plaintiff alleges that had Aetna properly followed the relevant ERISA regulations as set forth in this Complaint, it would have had to find that she met the Plan's definition of disability and that she was entitled to benefits.

38.    Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of the Defendants and any individual who reviewed her claim and the Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of *any* conflict of interest and any ERISA procedural violation which may have impacted or influenced Aetna's decision to deny her claim.

39.    With regard to whether Plaintiff meets the definition of disability set forth in the Plan, the Court should review the evidence in Plaintiff's claim *de novo,* because even if the Court concludes the Plan confers discretion, the unlawful violations of ERISA committed by Aetna as referenced herein are so flagrant they justify *de novo* review.

40.    As a direct result of Aetna's decision to deny Plaintiff's disability claim, she has been injured and suffered damages in the form of lost STD benefits, in addition to other potential employee benefits she may have been entitled to receive through or from the Plan

and/or Company as a result of being found disabled.  Plaintiff believes other potential employee benefits may include, but not be limited to long term disability benefits, health and other insurance related coverage or benefits, retirement benefits or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for her and her family/dependents in the event she became disabled.

41.     Pursuant to ERISA 29 U.S.C. §1132(a)(1)(B), in addition to seeking a determination in this action that she met the definition of disability and was disabled during the entire STD timeframe, Plaintiff seeks a determination that she is also disabled pursuant to the long term disability ("LTD") Plan which contains the same definition of disability as is set forth in the STD Plan.  In the alternative, Plaintiff's seeks a determination in this action that she is eligible to file a claim for LTD benefits through Defendant's Plan as a result of being found disabled for the entire STD timeframe in this action.

42.     In a letter dated August 7, 2014, Plaintiff notified Aetna she intended to file a LTD claim and requested that Aetna provide her with the necessary LTD application documents.  In a letter dated August 15, 2014, Aetna informed Plaintiff she was not eligible to file a claim for LTD benefits until all STD benefits had been exhausted.  But for Aetna's unlawful denial of Plaintiff's STD claim, she would have been eligible to file for LTD benefits and would be receiving those benefits through the relevant Plan.

43.     Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

44.     Plaintiff is entitled to prejudgment interest at the legal rate of interest pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A.     For an Order finding that Plaintiff meets the definition of disability set forth in the Short Term Disability Plan and requiring Defendants to pay Plaintiff the remaining Short Term Disability benefits that are owed and any other employee benefits she may be entitled to from the Defendants as a result of being found disabled pursuant to the Plan, from the date she was first denied these benefits through the date of judgment and prejudgment interest thereon;

B.     For an Order requiring Defendants to continue paying Plaintiff the aforementioned benefits until such time as she meets the conditions for termination of benefits;

C.     For an Order that Plaintiff is eligible for and entitled to receive Long Term Disability benefits, or in the alternative, that Plaintiff is eligible for and entitled to file a claim for Long Term Disability benefits as a result of being found disabled during the entire Short Term Disability timeframe and exhausting those benefits;

D.     For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

E.     For such other and further relief as the Court deems just and proper.

DATED this 1st day of June, 2015.

SCOTT E. DAVIS. P.C.

By:   _/s/ Scott E. Davis_
        Scott E. Davis
        Attorney for Plaintiff

13